William Gerrade FRIDAY, Petitioner,

v.

Dennis STRAUB, Respondent.

No. 00–CV–40311–FL.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 23, 2001.

Craig A. Daly, Detroit, MI, for William Friday.

Vincent J. Leone, Michigan Department of Attorney General, Habeas Corpus Division, Bethany L. Scheib, Not Admitted, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, MI, for Dennis Straub.

## MEMORANDUM OPINION AND ORDER

GADOLA, District Judge.

### I. *Introduction*

This matter is before the Court on petitioner William Gerrade Friday's application for the writ of habeas corpus under 28 U.S.C. § 2254. Petitioner is a state inmate currently confined at the Cotton Correctional Facility in Jackson, Michigan.

On December 12, 1996, a jury in Kent County Circuit Court found Petitioner guilty of delivering less than fifty grams of cocaine. *See* MICH. COMP. LAWS § 333.7401(2)(a)(iv). The convictions arose from allegations that Petitioner sold half an ounce of cocaine to a police informant named Wayne Mansfield on December 5, 1995. The alleged transaction occurred at 344 Prospect Street in Grand Rapids, Michigan where Mansfield lived.

The trial court sentenced Petitioner as a habitual offender (third offense) to imprisonment for twenty-two to forty years. The Michigan Court of Appeals affirmed Petitioner's conviction and sentence in an unpublished, *per curiam* opinion. *See People v. Friday,* No. 202469 (Mich.Ct. App. Dec. 1, 1998). On August 31, 1999, the Michigan Supreme Court denied leave to appeal. *See People v. Friday,* 461 Mich. 853, 601 N.W.2d 388 (1999) (table).

Petitioner filed his habeas petition through counsel on August 29, 2000. The grounds for relief read as follows:

I. Petitioner Friday was denied due process of law and a fair trial when the trial court failed to grant a mistrial after the prosecution's key witness testified that he had purchased drugs from Petitioner on numerous other occasions.

II. Petitioner was denied due process and a fair trial when the trial court provided the jury with only part of

the requested transcripts regarding the identification of Petitioner.

III. Petitioner was denied due process and a fair trial when the trial court allowed the state to play the original tape recording of the alleged drug transaction involving Petitioner and the informant, which had not been disclosed before trial.

IV. Petitioner was denied due process of law at his sentencing when he was not given a fair opportunity to refute unreliable hearsay allegations about his involvement in a murder and other shootings.

V. Petitioner Friday's sentence was grossly disproportionate to the crime and the offender.

The Court may grant the writ of habeas corpus only if the state court's adjudication of Petitioner's claims on the merits—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2). The Supreme Court has explained § 2254(d)(1) as follows:

Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreason-

ably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411, 120 S.Ct. 1495.

## II. *Discussion*

### A. *Exhaustion of State Remedies*

 A threshold question is whether petitioner exhausted state remedies for his claims. The doctrine of exhaustion of state remedies requires state prisoners to "fairly present" their claims to the state courts before raising those claims in a federal habeas corpus petition. *See* 28 U.S.C. § 2254(b)(1)(A) & (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir.2000) (citing *Franklin v. Rose*, 811 F.2d 322, 324–25 (6th Cir.1987)), *cert. denied*, —— U.S. ——, 121 S.Ct. 1487, 149 L.Ed.2d 374 (2001). There are

four actions a defendant can take which are significant to the determination whether a claim has been 'fairly presented': (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. General allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present' claims that specific constitutional rights were violated.

*McMeans,* 228 F.3d at 681 (citations omitted).

■ Petitioner presented all his claims to the Michigan Court of Appeals and the Michigan Supreme Court. However, he raised four of his five claims there as state law issues. Only his fourth claim was raised as a federal constitutional issue in state court. The Court concludes that Petitioner did not "fairly present" all his claims to the state courts.

■ Normally, the failure to exhaust state court remedies for even one claim requires dismissal of the entire petition. *Lyons v. Stovall,* 188 F.3d 327, 333 (6th Cir.1999) (citing *Rose v. Lundy,* 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982)), *cert. denied,* 530 U.S. 1203, 120 S.Ct. 2197, 147 L.Ed.2d 233 (2000). The failure to exhaust state remedies is not an absolute bar when, as here, the claims are plainly meritless and it would be a waste of time and judicial resources to require additional court proceedings. *Id.* Accordingly, in the interest of judicial economy, the Court will excuse the exhaustion requirement and proceed to address the merits of Petitioner's claims.

### B. *Denial of Motion for Mistrial*

Petitioner's first claim alleges that he was denied due process of law and a fair trial when the trial court denied his motion for a mistrial. The motion was based on Wayne Mansfield's testimony that he had bought drugs from Petitioner on occasions other than the one for which Petitioner was being tried. Petitioner contends that eliciting this testimony and the intentional injection of the evidence concerning other transactions deprived him of his rights under state and federal law.

■ The portion of Petitioner's claim that alleges violations of the Michigan Rules of Evidence is not a basis for granting the writ of habeas corpus. *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984) (stating that "[a] federal court may not issue the writ on the basis of a perceived error of state law"). Federal courts may grant the writ of habeas corpus only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(c)(3) and 2254(a). Moreover,

> '[e]rrors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding.' *Cooper v. Sowders,* 837 F.2d 284, 286 (6th Cir. 1988). Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' *Montana v. Egelhoff,* 518 U.S. 37, 43, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996)(quoting *Patterson v. New York,* 432 U.S. 197, 202, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977)); *see also Spencer v. Texas,* 385 U.S. 554, 563–64, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967).

*Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir.2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 1643, 149 L.Ed.2d 502 (2001); *see also Clemmons v. Sowders,* 34 F.3d 352, 357 (6th Cir.1994) (stating that "[h]abeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation"). The Supreme Court has declined to hold that similar act evidence is so extremely unfair that its admission violates fundamental conceptions of justice. *See Dowling v. United States,* 493 U.S. 342, 352–53, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990).

■ Even assuming that Petitioner's claim is cognizable here, the state appellate court's determination that the alleged errors did not deprive Petitioner of a fair and impartial trial was reasonable. The

first alleged error occurred on direct examination of Wayne Mansfield. The prosecutor asked Mansfield if he had made previous purchases from Petitioner. Mansfield responded, "Yes, I bought from him before." Tr. II, 19.[1]

Defense counsel objected to the comment and moved for a mistrial. The trial court determined in the jury's absence that the prosecutor's question was proper and that Mansfield's comment did not prejudice Petitioner. The court denied Petitioner's motion for a mistrial and declined to give a cautionary instruction. *See id.* at 25–26.

Later, on cross-examination, Mansfield testified that he was in possession of "dope" from Petitioner when he (Mansfield) got arrested. Defense counsel objected, and the trial court instructed the jury to disregard the comment. *See id.* at 93.

Defense counsel subsequently asked Mansfield how many times he sold dope before he was arrested for the second time. Defense counsel asked, "Would I be correct in assuming it was about ten times?" Mansfield answered, "That I bought from your client, yes." *Id.* at 94. Defense counsel objected, and Mansfield admitted in the jury's absence that he "probably" made the objectionable comments because defense counsel was "saying stuff that [he didn't] appreciate." *Id.* at 101. When the jurors returned to the courtroom, the trial court instructed them to disregard Mansfield last answer regarding alleged drug transactions between himself and Petitioner. *See id.* at 102.

■ The latter two alleged errors likely were harmless because jurors are presumed to follow a trial court's instructions. *Weeks v. Angelone,* 528 U.S. 225, 234, 120

S.Ct. 727, 145 L.Ed.2d 727 (2000) (citing *Richardson v. Marsh,* 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987)). Even Mansfield's initial comment—that he had bought from Petitioner previously— was harmless in light of evidence that Mansfield was an informant and had led the police to believe he could buy cocaine from Petitioner.

The evidence also established that the police had Petitioner under surveillance. They did not arrest Petitioner immediately after the transaction on December 5, 1995, because they intended to make additional purchases from him as part of an ongoing investigation. *See* Tr. III, 26.

In addition, Mansfield testified that, on December 5, 1995, Petitioner handed a baggie of cocaine to his girlfriend, who handed the cocaine to Mansfield. Then Mansfield gave $400 to Petitioner's girlfriend, who gave the money to Petitioner. Mansfield confirmed with Petitioner that the price was $400 for a half ounce, and $800 for an ounce. *See* Tr. II, 14–15. The transaction was taped without Petitioner's knowledge and played for the jury during trial. *See id.* at 37–43. The police corroborated much of Mansfield's testimony.

The Court does not believe that the alleged errors had a substantial and injurious effect or influence on the jury's verdict. *O'Neal v. McAninch,* 513 U.S. 432, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995); *Brecht v. Abrahamson,* 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). Therefore, the state court's conclusion that the alleged errors did not deprive Petitioner of a fair trial did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent. Petitioner is not entitled to habeas relief on the basis of his first claim.

---

**1.** For ease of reference, the Court will refer to the five-volume transcript of trial as follows: Tr. I (December 4, 1996); Tr. II (December 5, 1996); Tr. III (December 9, 1996); Tr. IV (December 11, 1996); and Tr. V (December 12, 1996).

## C. *The Jurors' Request for Portions of the Transcript*

Petitioner's second claim concerns the trial court's response to the jurors' request for transcripts and for a re-reading of certain testimony. The jurors initially asked whether a transcript of the testimony of Officers Anthony Gomez and Richard Mainprize was available. The trial court explained to the jurors the difficulty of preparing the transcript in a short amount of time. The court then excused the jurors for the night after indicating that it would provide the transcripts, if needed, on the following day. *See* Tr. IV, 84–85. As the jurors left the courthouse for the day, they submitted a written note asking to have the two officers' testimony read to them in the morning. Their note specified that the part they wanted read to them was the "positive identification of William Friday at the scene." Tr. V, 3

On the following day, the trial court provided the jury with part of Officer Gomez' testimony, including Gomez' identification of Petitioner. The trial court explained that it was not providing any of Officer Mainprize's testimony because Mainprize did not identify Petitioner. The trial court encouraged the jury to make another request if there was something that it had missed or if they wanted additional material. *See id.* at 3–4. There were no additional requests for the officers' testimony.

Petitioner alleges that he was denied due process and a fair trial when the trial court provided only Officer Gomez' testimony. Petitioner contends that the trial judge's responses misled the jury by unduly emphasizing the testimony of the officer who identified him and by not complying with the jurors' request for the testimony of both officers. The Michigan Court of Appeals concluded on review of this claim that the trial court did not abuse its discretion in refusing to provide the jury with a transcript of Officer Mainprize's testimony.

Petitioner has not cited any Supreme Court decision that requires judges to re-read testimony or to provide transcripts of testimony to jurors on request. He cites *Sullivan v. Louisiana*, 508 U.S. 275, 277, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), for the principle that he had a right to have an impartial jury determine his guilt or innocence. He cites *Bollenbach v. United States*, 326 U.S. 607, 613, 66 S.Ct. 402, 90 L.Ed. 350 (1946), for the proposition that judges must respond with "concrete accuracy" when a jury seeks clarification. *Bollenbach*, however, involved a trial court's erroneous answer to a jury's inquiry about a legal question.

Petitioner's jury did not seek legal clarification or supplemental instructions, and Petitioner does not allege that the trial court's response to the jury's inquiry was inaccurate. This was not a situation where the trial court responded with identification testimony from one witness, but remained silent about another witness' failure to identify the defendant. The trial court admitted that, while Officer Gomez identified Petitioner at trial, Officer Mainprize did not. Gomez identified Petitioner in court as the person he followed to 344 Prospect Street on December 5, 1995, *see* Tr. I, 31–36, whereas Officer Mainprize testified about his surveillance of a drug transaction at 344 Prospect Street between Wayne Mansfield and a subject known as "Big Man." *See* Tr. III, 3–24.

The alleged error could not have resulted in a biased jury because Mainprize's testimony corroborated Wayne Mansfield's testimony, and Mansfield had previously testified that he knew Petitioner as "Big Man." *See* Tr. II, 11. A re-reading of Mainprize's testimony would have reinforced Mansfield's testimony that Petitioner sold cocaine to him.

The Court concludes that the trial court's failure to provide a transcript of Officer Mainprize's testimony or to re-read Mainprize's testimony did not deprive Petitioner of a fair trial or an impartial jury. Therefore, the state appellate court's conclusion did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent. Petitioner is not entitled to habeas relief on the basis of his second claim.

### D. *The Tape Recording*

■ Petitioner alleges next that he was denied due process and a fair trial when the trial court permitted the prosecutor to play the original tape recording of the alleged drug transaction between Petitioner and Wayne Mansfield. Petitioner claims that the prosecutor withheld the tape, violated discovery rules, and prejudiced him by presenting the same evidence twice.

■ The alleged violation of state rules governing discovery is not a basis for granting the writ of habeas corpus. *Harris*, 465 U.S. at 41, 104 S.Ct. 871. Furthermore, this is not a case where the prosecutor withheld evidence favorable to the defense, *cf. Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (holding that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution"). The prosecutor gave a copy of the tape recording to defense counsel before trial, and the original tape was available to defense counsel then. The prosecutor played the copy of the recording during Wayne Mansfield's testimony. He sought, and was given, permission to play the original tape recording after he acquired a machine that could amplify the sound better. Defense counsel was given the oppor-

tunity to hear the original tape before it was played for the jury. *See* Tr. III, 30–32; Tr. IV 4–8.

Although the original tape recording apparently was a better quality recording than the copy previously given to defense counsel and played for the jury, it was otherwise identical to the copy. Therefore, Petitioner was not deprived of a fair trial or due process, and the state appellate court's denial of relief did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent. Petitioner's third claim does not entitle him to habeas relief.

### E. *Alleged Hearsay Relied Upon at Sentencing*

■ Petitioner's fourth claim alleges that he was denied due process of law at sentencing. Specifically, Petitioner contends that, during a sentencing hearing, he was denied a fair opportunity to refute unreliable hearsay allegations about his involvement in a murder. The Michigan Court of Appeals found no merit in this claim because the trial court stated on the record that it was not considering Petitioner's involvement in any homicide.

■ Petitioner possessed a constitutional right not to be sentenced on the basis of "misinformation of constitutional magnitude." *Roberts v. United States*, 445 U.S. 552, 556, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980) (quoting *United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972)); *see Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948) (stating that reliance on "extensively and materially false" information, which the prisoner had no opportunity to correct violates due process of law). To prevail on his claim, Petitioner must demonstrate that the disputed information was materially false and that the trial court relied on the information. *Collins v.*

*Buchkoe,* 493 F.2d 343, 345–46 (6th Cir. 1974).

The trial court stated at sentencing that it was not considering Petitioner's alleged involvement in a homicide. The trial court noted that the allegations were a matter for the police and prosecution to prove, if they could, and that they had been unable to do so. *See* Tr. of Sentencing Proceedings at 12. Petitioner has failed to show that the trial court relied on allegations that he was involved in a murder and shootings. Therefore, the state appellate court's conclusion that no due process violation occurred was not contrary to, or an unreasonable application of, Supreme Court precedent. Petitioner's fourth claim does not warrant habeas relief.

### F. *The Proportionality of the Sentence*

■ Petitioner fifth and final claim is that his sentence of twenty-two to forty years was grossly disproportionate and cruel and unusual punishment under the Eighth Amendment. Petitioner contends that the only factor relied on by the trial court was the fact that he was dangerous and a threat to the community. The Michigan Court of Appeals nevertheless found no abuse of discretion in sentencing Petitioner.

■ A plurality of the Supreme Court has held that the Eighth Amendment contains no guarantee of strict proportionality between the crime and sentence. *See Harmelin v. Michigan,* 501 U.S. 957, 965, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991); *United States v. Hopper,* 941 F.2d 419, 422 (6th Cir.1991). The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids only extreme sentences that

are grossly disproportionate to the crime. *Id.* at 1001, 111 S.Ct. 2680 (Kennedy, J., concurring); *Coleman v. Mitchell,* 268 F.3d 417, 452–53 (6th Cir.2001) (citing *Coker v. Georgia,* 433 U.S. 584, 592, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977)).

In *Harmelin,* the Supreme Court upheld a life sentence without the possibility of parole for possession of more than 650 grams of cocaine. In *Hutto v. Davis,* 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982), the Supreme Court upheld a sentence of forty years in prison for possession and distribution of less than nine ounces of marihuana. And in *Rummel,* the Supreme Court held that a mandatory life sentence under a state recidivist statute did not constitute cruel and unusual punishment.[2]

Petitioner was sentenced as a habitual offender, third offense. His criminal history included two felony convictions, one misdemeanor conviction, and a juvenile record. In addition, there were pending charges against him for possession with intent to distribute marijuana, felonious assault, and being a felon in possession of a firearm. At the time of the offense in this case, Petitioner was serving a term of probation for assaulting his girlfriend. *See Friday,* No. 202469, at 3.

The Court concludes on the basis of the facts and in light of *Harmelin, Davis,* and *Rummel,* that this case is not the type of exceedingly rare situation that justifies overturning a legal sentence. Petitioner's sentence was not grossly disproportionate to the offense or the offender. Therefore, his sentence did not constitute cruel and unusual punishment, and the state appellate court's refusal to grant relief was not

**2.** Rummel was convicted of obtaining $120.75 by false pretenses, a crime punishable by at least two years, but not more than ten years in prison. His two prior felonies consisted of: (1) fraudulent use of a credit card to obtain $80.00 worth of goods and services, a felony punishable by two to ten years in prison; and (2) passing a forged check for $28.36, a crime punishable by two to five years in prison.

contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Petitioner is not entitled to habeas relief on the basis of his final claim.

### III. *Conclusion*

For all the reasons given above, the Court **DENIES** Petitioner's application for the writ of habeas corpus. For the same reasons, the Court **DECLINES** to issue a certificate of appealability. Reasonable jurists would not find the Court's assessment of Petitioner's claims debatable or wrong. *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).