**Otis J. BROWN, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

No. CIV. 01–40092.
No. CR. 97–50021.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 25, 2002.

## OPINION AND ORDER GRANTING CERTIFICATE OF APPEALABILI- TY AND GRANTING APPLICA- TION TO WAIVE PREPAYMENT OF APPEAL FILING FEE

GADOLA, District Judge.

Before the Court are Petitioner's "motion for certificate of appealability" [docket entry 429] and "application to proceed *in forma pauperis*" [docket entry 422]. Pursuant to Local Rule 7.1(e), the Court concludes that a hearing would not aid substantially in the disposition of these matters. For the reasons set forth below, the Court shall grant Petitioner's motion for a certificate of appealability and grant waiver of prepayment of the appeal filing fee.

## I BACKGROUND

On November 9, 1998, Petitioner pled guilty to several counts of the second superseding indictment in this case. Count I included violations of 21 U.S.C. §§ 846 and 841(a)(1) (conspiracy to distribute cocaine). Count VII included violations of 21 U.S.C. § 841(a)(1) (distribution of cocaine) and 18 U.S.C. § 2 (aiding and abetting). Count XVI included violations of 21 U.S.C. § 841(a)(1) (possession with intent to distribute cocaine) and 18 U.S.C. § 2 (aiding and abetting). Count XVII included a violation of 18 U.S.C. § 922(g) (felon in possession of a firearm).

On March 18, 1999, the Court sentenced Petitioner pursuant to 21 U.S.C. §§ 841(b)(1)(A) and (C) and 18 U.S.C. § 924(a)(2). (Pre–Sentence Investigation Report at ¶¶ 56–74.) The Court determined that Petitioner's guideline range was 135 to 168 months, as the parties agreed in the plea agreement. The Court nonetheless granted a request for a downward departure for substantial assistance under United States Sentencing Guideline (U.S.S.G.) § 5K1 .1 and 18 U.S.C. § 3553(e) and sentenced Petitioner to 90 months' incarceration for all counts and a five-year supervised release term for count I, as well as concurrent three-year terms on counts VII, XVI, and XVII.

Petitioner appealed this sentence, arguing that "he was entitled to an evidentiary hearing on whether the district court relied upon his diary when ruling on his motion for a downward departure based on 'aberrant' behavior" and that the Court improperly applied the sentencing guideline range to him. *United States v. Thornton*, No. 99–1275, 2000 WL 1597928, at **2–3 (6th Cir. Oct.17, 2000). The Sixth Circuit rejected both arguments. *Id.*

Petitioner next moved to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Petitioner offered four

grounds for his motion. First was that the indictment for violating § 922(g) was defective because count XVII failed to allege that Petitioner used or carried a firearm. Second was that the Court improperly enhanced his sentence for possession of a firearm pursuant to U.S.S.G. § 2D1.1(b)(1). Third was that the Court improperly failed to reduce his sentence pursuant to U.S.S.G. § 3B1.2 for minimal or minor participation in the offenses. Finally, Petitioner argued that his sentence was infirm in light of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). On July 20, 2001, the Court denied Petitioner's § 2255 motion, rejecting each of these arguments.

On September 6, 2001, the Court denied Petitioner's motion for reconsideration. On September 13, 2001, Petitioner filed a notice of appeal. On October 25, 2001, Petitioner applied to proceed *in forma pauperis* ("IFP"). In a letter dated October 25, 2001, the Sixth Circuit informed Petitioner that he must obtain a ruling as to a certificate of appealability ("COA") from this Court before he could proceed further with his appeal. Petitioner, however, failed to move for a COA. The Sixth Circuit therefore reiterated its point in letters of November 26, 2001 and January 18, 2002. Petitioner still did nothing.

On January 25, 2002, this Court ordered Petitioner to move for a COA within twenty-one days and denied without prejudice Petitioner's application to proceed IFP on the ground that such an application would be moot unless Petitioner were first to show that he were entitled to a COA. *See Desmond v. Snyder*, No. 96–327–GMS, 2000 WL 1726531, at \*\*3–4 (D.Del. Feb.16, 2000). Finally, on February 1, 2002, Petitioner filed the present motion, *pro se*, for a certificate of appealability. This motion contains several procedural deficiencies discussed *infra*.

## II ANALYSIS

### A. COA

The Court will discuss three issues regarding the COA: (1) when a district court should decide whether to issue a COA; (2) the effect of Petitioner's failure to comply with the Local Rules in his motion for a COA; and (3) the merits of Petitioner's motion for a COA.

#### 1. When a district court should rule on a COA

The Court discusses this issue because it is unclear, in light of recent precedent, when a district court must decide whether to issue a COA. On May 17, 2001, the Honorable Boyce Martin, Chief Judge of the Sixth Circuit Court of Appeals, sent a letter to judges in this jurisdiction "suggest[ing] that when you dismiss a habeas corpus petition you make a concurrent determination as to any certificate of appealability." Letter from Hon. Boyce F. Martin, Jr. to District and Magistrate Judges, May 17, 2001.

In the wake of Judge Martin's letter, many judges in this jurisdiction, the undersigned included, made it their practice to decide, *sua sponte*, whether to issue a COA at the end of their orders denying a motion for the writ of habeas corpus. *See, e.g., Grayson v. Grayson*, 185 F.Supp.2d 747, 752 (E.D.Mich.2002); *Friday v. Straub*, 175 F.Supp.2d 933, 941 (E.D.Mich. 2001) (Gadola, J.); *Allen v. Stovall*, 156 F.Supp.2d 791, 798 (E.D.Mich.2001); *White v. Withrow*, No. 00–74231, 2001 WL 902624, at \*12 (E.D.Mich. June 22, 2001).

■ Upon further reflection, however, the undersigned concludes that the better practice is not to decide whether to grant or deny a COA until after a petitioner moves for such relief. Three reasons support this approach.

The first is that recent precedent weighs against premature adjudication of a COA. In *Murphy v. Ohio*, 263 F.3d 466 (6th Cir.2001), the petitioner argued that "the district court erred in prematurely denying a COA before [he] had even applied for one." *Id.* at 466. The Sixth Circuit vacated the district court's order denying a COA and noted disapprovingly that "the *lower court denied Murphy a COA before Murphy had even applied for one*, and failed to provide any analysis whatsoever as to whether Murphy had made a substantial showing of a constitutional right." *Id.* (internal quotation omitted) (emphasis added). The logical inference from this language is that, although it might be permissible for a district court to deny a COA before a petitioner moves for one *if* the district court's analysis is sufficiently thorough, the more prudent course is to wait for the petitioner to apply for a COA and only then engage in a detailed analysis of the issues presented before deciding whether to grant the COA. The latter approach would clearly prevent a district court from running afoul of *Murphy;* the former might not.

The second reason to wait for a petitioner to move for a COA before adjudicating the matter is Federal Rule of Appellate Procedure 22(b)(1). Rule 22(b)(1), in relevant part, states that "*[i]f an applicant files a notice of appeal,* the district judge who rendered the judgment *must* either issue a certificate of appealability or state why a certificate should not issue." Fed. R.App. P. 22(b)(1) (emphasis added). Thus, the plain language of Rule 22(b)(1) shows that a petitioner must (1) move for a

COA *and* (2) file a notice of appeal before this Court is required to decide whether a COA shall issue. The second predicate is obvious from the text of the Rule.

The first predicate—that the petitioner move for a COA before this Court is required to grant or deny one—is somewhat less obvious, but nonetheless exists. This is so because Rule 22(b)(1) applies only where the Court confronts an "applicant" for a COA. *Id.* An "applicant" is "a person who applies." *Webster's New World Dictionary* 67 (Victoria Neufeldt, ed.1988). Accordingly, a petitioner must apply for a COA before Rule 22(b)(1) requires the Court to grant or deny the certificate.

The third reason in favor of not ruling on a COA until a petitioner moves for one is that prematurely ruling on a COA would effectively deprive many petitioners of the opportunity to prove that they are entitled to a COA. Under *Barefoot v. Estelle*, 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983), a petitioner seeking a COA must show that the issues in his petition are debatable among jurists of reason, that a court could resolve the issues differently, or that the questions are "adequate to deserve encouragement to proceed further." *Id.* at 893 n. 4, 103 S.Ct. 3383 A petitioner often will not address the *Barefoot v. Estelle* standard in his habeas motion. Instead, a petitioner frequently addresses that standard, and moves for a COA, only in response to the Court's denial of habeas relief.[1] Were the Court to deny the COA *sua sponte* at the end of an order denying habeas relief, accordingly, the Court would effectively deprive many

---

1. *See, e.g., United States ex rel. Rodriguez v. Cowan*, No. 96 C 6743, 2001 WL 1002503, at *1 (N.D.Ill. Aug.29, 2001) (adjudicating a motion for a COA filed *after* the district court denied habeas relief); *Cofske v. United States*, 143 F.Supp.2d 85, 87–88 (D.Mass. Apr.20, 2001) (same); *Douglas v. Huffman*, No. C–2–99–688, 2000 WL 1472717, at *1 (S.D.Ohio

Sept.21, 2000) (same); *Higgs v. Hobbs*, No. 99–1113, 2000 WL 284277, at *1 (S.D.Ala. Feb.29, 2000) (same); *Brooks v. Artus*, No. 97–CV–1142, 1999 WL 455444, at *1 (N.D.N.Y. June 28, 1999) (same); *United States v. Arena*, No. 95–CR–144, 1998 WL 247468, at *1 (N.D.N.Y. May 11, 1998) (same).

petitioners of an opportunity to explain why, pursuant to *Barefoot v. Estelle,* they were entitled to a COA.

One could argue that, when the Court adjudicates a petitioner's habeas motion, the petitioner has already had one opportunity to meet the standard delineated in *Barefoot v. Estelle.* The text of Rule 22, however, indicates that the petitioner is entitled, under that Rule, to a second opportunity, independent of his motion for habeas relief, to prove that he is entitled to a COA. That second opportunity is important to some petitioners because, in some cases, a petitioner's ability to marshal his arguments in favor of a COA after his motion for habeas relief is denied may be critical to obtaining the certificate.[2]

For the reasons set forth above, the undersigned's policy shall be to decide whether to issue a COA only after a petitioner moves for such relief.

### 2. Prisoners' Non–Compliance with the Local Rules

Having decided that now is the proper time to address Petitioner's motion for a COA, the Court now turns to a procedural defect underlying Petitioner's motion, which is Petitioner's failure to comply with the Local Rules of this Court. The Court addresses this subject because it frequently arises in prisoner litigation, and there seems to be scant authority on point.

■ The Court begins by observing that the Local Rules "apply in civil and criminal actions." L.R. 1.1(c). A prisoner's motion

for relief pursuant to § "2255 is a civil action." *McCune v. United States,* 406 F.2d 417, 419 (6th Cir.1969). Therefore, the Local Rules govern § 2255 motions, just as they govern any other civil or criminal action to which a prisoner is a party.

Petitioner has violated several of the Local Rules. He has, to wit, failed to note that he sought Respondent's concurrence in the relief sought, thus violating Local Rule 7.1(a). He has also failed to support his motion with a brief, which violates Local Rule 7.1(c). The Court could, therefore, strike Petitioner's motion for failure to abide by the Local Rules. This is a measure that the Court would not hesitate to take in a typical situation.

However, *pro se* prisoner litigation, and motions for habeas relief in particular, do not present a typical situation. It is the undersigned's experience that most *pro se* prisoners, maybe all, apparently lack access to the Local Rules.[3] When the Court has stricken the submissions of such litigants, accordingly, it usually has found that, after an awkward series of exchanges, the prisoner will be able to file a motion that basically complies with the Local Rules. The drawback to this approach is that it consumes time.

The undersigned has thus considered holding that the Local Rules simply do not apply to prisoner litigation. Such a holding, however, would be lawless. The Local Rules, as explained above, plainly do apply to prisoner litigation. Although the Court

---

**2.** This happens to be such a case. The key reason that this Court shall grant a COA to Petitioner, discussed in detail *infra,* is that the panel opinion in *United States v. Buckland,* 259 F.3d 1157, 1163 (9th Cir.2001), *rev'd* 277 F.3d 1173 (2002) shows that another court could have resolved Petitioner's motion differently. That authority was, however, unavailable when the Court denied Petitioner's habeas motion on the merits.

**3.** This is so despite the availability of the Local Rules on the Internet. *See http://www.mieb.uscourts.gov/rules local dt. html.* Because the vast majority of situations in which prisoners run afoul of the Local Rules involve the application of Local Rules 5.1 and 7.1, the Court shall publish the current version of those Rules as an appendix to this opinion.

may suspend operation of the Local Rules, it may only do so "temporarily" and "for good cause shown." L.R. 1.2. In other words, the Court must evaluate on a case-by-case basis whether it will suspend operation of the Local Rules; the Court may not state categorically that the Local Rules do not apply to prisoner litigation.

Even if the Court could hold categorically that the Local Rules do not apply to prisoner cases, it would not do so. In many cases, the policies underlying the Local Rules apply as much to this sort of litigation as to any other. Local Rule 7.1(a)'s requirement that a movant seek concurrence, for example, often prevents the Court from having to adjudicate a dispute that would not exist if the parties were to communicate effectively with one another, thus sparing judicial resources for situations in which the parties genuinely disagree. This is often true even in the context of prisoner litigation. Although the parties may have to seek concurrence via the mail in prisoner cases, there is no sound policy reason to hold that, where one of the litigants is a prisoner, Local Rule 7.1(a) should never apply.

■ The Court therefore holds that the Local Rules apply to this dispute. Nonetheless, the Court will, pursuant to Local Rule 1.2, suspend operation of the Local Rules regarding Petitioner's motion for a COA. The Court excuses Petitioner's failure to seek concurrence because the response to Petitioner's substantive § 2255 motion makes it evident that Respondent will not likely concur in the issuance of a COA. The Court excuses Petitioner's failure to file a supporting brief because his § 2255 motion, in conjunction with the motion for a COA, make the grounds upon which Petitioner argues for a COA sufficiently evident.

### 3. Substantive Merits of Petitioner's Motion

Section 2253 of Title 28 of the United States Code, as amended in 1996, provides, in pertinent part, that

[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

(B) the final order in a proceeding under section 2255.

28 U.S.C. § 2253(c)(1). Similarly, amended Federal Rule of Appellate Procedure 22 provides that

[i]n a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court, an appeal by the applicant for the writ may not proceed unless a district or circuit judge issues a certificate of appealability pursuant to section 2253(c) of Title 28, United States Code.

Fed. R.App. Proc. 22(b).

■ The standard for the issuance of a certificate of appealability is set out at 28 U.S.C. § 2253(c)(2) and provides that the certificate may be issued only upon a "substantial showing of the denial of a constitutional right." This standard codifies the standard promulgated in *Barefoot v. Estelle* for the issuance of a certificate of probable cause. *Lyons v. Ohio Adult Parole Authority*, 105 F.3d 1063, 1073 (6th Cir.1997). The petitioner is not required to show that he will prevail on the merits, but rather that the issues are debatable among jurists of reason, that a court could resolve the issues differently, or that the questions are "adequate to deserve encouragement to proceed further." *Barefoot*, 463 U.S. at 893 n. 4, 103 S.Ct. 3383.

■ The crux of Petitioner's argument is that a COA should issue because his sentence is invalid under *Apprendi*. Although this Court rejected Petitioner's *Apprendi* argument in the order denying Petitioner's § 2255 motion, a court could resolve this issue differently. In fact, one already has.

In *United States v. Buckland*, 259 F.3d 1157, 1163 (9th Cir.2001), *rev'd* 277 F.3d 1173 (2002), a panel of the Ninth Circuit Court of Appeals held that 21 U.S.C. §§ 841(b)(1)(A) and (B) are facially unconstitutional under *Apprendi. See United States v. Kirksey*, 174 F.Supp.2d 611, 614 (E.D.Mich.2001) (Rosen, J.). The Ninth Circuit, sitting *en banc*, eventually reversed the panel's decision. The *Buckland* panel's opinion, nonetheless, proves that another court could conclude that 21 U.S.C. § 841(b)(1)(A) is facially unconstitutional and thus resolve differently Petitioner's § 2255 motion challenging his sentence under at least that provision of the statute. *But see United States v. Crespo*, No. 92–339, 2002 WL 47830, at **2–4 (E.D.Pa. Jan.11, 2002) (denying the petitioner's motion for a COA despite *Buckland* ). Therefore, the Court shall issue a COA as to the following issue: whether Petitioner's sentence is invalid under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

### B. APPLICATION TO PROCEED IFP

To proceed IFP on appeal in a § 2255 case, a prisoner "must seek permission from the district court under Rule 24(a) of the Federal Rules of Appellate procedure." *United States v. Atkins*, 171 F.Supp.2d 769, 773 (W.D.Tenn.2001). Rule 24(a), in relevant part, states as follows:

A party to an action in a district court who desires to proceed on appeal *in forma pauperis* shall file in the district court a motion for leave to so proceed, together with an affidavit, showing, in the detail prescribed by Form 4 of the Appendix of Forms, the party's inability to pay fees and costs or to give security therefor, the party's belief that the party is entitled to redress, and a statement of the issues which that party intends to present on appeal.

Fed R.App. P. 24(a). Once a petitioner files the requisite motion and affidavit, this Court must then certify in writing whether the appeal is taken in good faith. *Id.*

Petitioner has filed the necessary motion and affidavit. For the same reasons that this Court grants Petitioner a COA, the Court certifies that Petitioner's appeal is taken in good faith. For that reason, this Court shall grant Petitioner's motion to proceed IFP.

### III CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Petitioner's "motion for certificate of appealability" [docket entry 429] is **GRANTED.**

**IT IS FURTHER ORDERED** that a COA is granted as to the following issue: **whether Petitioner's sentence is invalid under** *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

IT IS FURTHER ORDERED that Petitioner's "application to proceed *in forma pauperis* " [docket entry 422] is GRANTED.

SO ORDERED.

### APPENDIX A

**LR 5.1 Filing of Papers**

**(a) General Format of Papers Presented for Filing.** All papers presented for filing must show the name of the court, the title and number of the case, the name or nature of the paper in sufficient detail for identification, the name of the judge and

magistrate judge to whom the case is assigned, and the name, office address, telephone number and state bar identification number of the attorney. All papers must be on 8½ × 11 inch white paper of good quality and be plainly typewritten, printed, or prepared by a clearly legible duplication process, and double-spaced, except for quoted material and footnotes. Except for standard preprinted forms that are in general use, type size of all text and footnotes must be no smaller than 10 characters per inch (non-proportional) or 12 point (proportional). Margins must be at least one and one-half inches on the top and one inch on the sides and bottom. Each page must be numbered consecutively. This subsection does not apply to exhibits submitted for filing and documents filed in removed actions prior to removal from the state courts.

**(b) Number of Copies Required for Filing.** All papers filed with the clerk must include an original and one copy. The copy should be clearly marked "JUDGE'S COPY."

**(c) Copies Required for a Three–Judge Court.** In any action or proceeding in which a three-judge court is requested, parties must file an original and three copies of all papers until it is determined either that a three-judge court will not be convened or that the three-judge court has been convened and dissolved and the case remanded to a single judge. The parties may be permitted to file fewer copies by order of the court.

**(d) Exhibits.** Bulky exhibits are to be securely bound or fastened and clearly marked with the case number and the name of the judge to whom the case is assigned.

COMMENT:

*LR 26.2* applies to filing discovery material.

*LR 83.50* applies to filing papers in bankruptcy cases and proceedings.

Counsel and parties are advised that the handling and storage of documents are facilitated if they are received flat and without folds.

### LR 7.1 Motion Practice

**(a) Seeking Concurrence in Motions.**

(1) The movant must ascertain whether the contemplated motion will be opposed. If the movant obtains concurrence, the parties may make the subject matter of the contemplated motion a matter of record by stipulated order.

(2) If concurrence is not obtained, the motion must state:

(A) there was a conference between attorneys or unrepresented parties in which the movant explained the nature of the motion and its legal basis and requested but did not obtain concurrence in the relief sought; or

(B) despite reasonable efforts specified in the motion, the movant was unable to conduct a conference.

(3) The court may tax costs for unreasonable withholding of consent.

**(b) Response.** A respondent opposing a motion must file a response, including a brief and supporting documents then available.

**(c) Briefs.**

**(1) Briefs Required and Permitted.**

(A) Motions and responses to motions must be accompanied by a brief. The brief may be separate from or may be contained within the motion. If contained within the motion, the brief must begin on a new page and must be clearly identified as the brief. A movant may also file a reply brief.

(B) Briefs must comply with *LR 5.1.*

**(2) Form of Required Briefs.** A brief supporting a motion or response must, at the beginning, contain a concise statement of the issues presented and, on the following page, the controlling or most appropriate authority for the relief sought. The brief may contain a table of contents, an index of authorities, and an index of exhibits attached to the brief.

**(3) Length of Briefs.**

(A) The text of a brief supporting a motion or response, including footnotes and signatures, may not exceed 20 pages. A party seeking to file a longer brief may apply *ex parte* in writing setting forth the reasons.

(B) The text of a reply brief, including footnotes and signatures, may not exceed 5 pages.

**(d) Briefing Schedule.**

**(1) Dispositive Motions.**

(A) Dispositive motions are motions:
- for injunctive relief,
- for judgment on the pleadings,
- for summary judgment,
- to dismiss or quash an indictment or information made by a defendant,
- to suppress evidence in a criminal case,
- to certify or decertify a class,
- to dismiss for failure to state a claim upon which relief can be granted, and
- to involuntarily dismiss an action.

(B) A response to a dispositive motion must be filed within 21 days after service of the motion.

(C) If filed, a reply brief supporting a dispositive motion must be filed within 7 days after service of the response, but not less than 3 days before oral argument.

**(2) Nondispositive Motions.**

(A) Nondispositive motions are motions not listed in *LR 7.1(d)(1)(A)*.

(B) A response to a nondispositive motion must be filed within 14 days after service of the motion.

(C) If filed, a reply brief supporting a nondispositive motion must be filed within 7 days after service of the response, but not less than 3 days before oral argument.

**(e) Hearing on Motions.**

(1) Oral hearings on motions for rehearing or reconsideration, motions for reduction of sentence and motions in civil cases where a party is in custody will not be held unless ordered by the assigned judge.

(2) Oral hearings on all other motions will be held unless the judge at any time prior to the hearing orders their submission and determination without oral hearing on the briefs filed as required by this rule.

(3) The motion must be filed with the clerk of the court who will forward it to the assigned judge. The judge will set or cause to be set a date for hearing, notice of which will be given to the parties. Inquiries regarding time of hearing may be directed to the judge's chambers.

**(f) Additional Time to File Supporting Documents and Brief.** When it is indicated in a motion, response or written request that the filing of additional affidavits or other documents in support or opposition is necessary, the judge to whom the case is assigned may enter an *ex parte* order (which must have been prepared by the party making the request) specifying the time within which such additional documents and brief must be filed, or approve any written stipulations in regard thereto. A copy of an *ex parte* order so entered must immediately be served upon opposing counsel or a party without counsel. Counsel or a party without counsel obtaining such order must also immediately notify opposing counsel or a party without counsel personally or by telephone of the sign-

ing of the order. A party against whom an *ex parte* enlargement of time has been granted may immediately move for a dissolution of the order granting enlargement.

**(g) Motions for Rehearing or Reconsideration.**

**(1) Time.** A motion for rehearing or reconsideration must be filed within 10 days after entry of the judgment or order.

**(2) No Response and No Hearing Allowed.** No response to the motion and no oral argument are permitted unless the court orders otherwise.

**(3) Grounds.** Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that correcting the defect will result in a different disposition of the case.

COMMENT: The 20–page limit under *LR 7.1(c)(3)(A)* will be strictly enforced by the Court. Attempts to circumvent the LR in any way may be considered an abusive practice which may result in the motion or response being stricken as well as sanctions being imposed under *LR 11.1.* (Approved 12/6/99)

The following LR's also apply to specific types of motions:

1) *LR 15.1,* Form of a Motion to Amend and Its Supporting Documentation

2) *LR 37.1,* Motion to Compel Discovery

3) *LR 37.2,* Form of Discovery Motions

4) *LR 54.2,* Social Security Fee Motions

5) *LR 59.1,* Motion to Alter or Amend a Judgment

6) *LR 65.1,* Motions for Temporary Restraining Orders and for Preliminary Injunctions

7) *LR 83.50,* Bankruptcy Cases and Proceedings