Richard DAVIS, a.k.a. Sedrick Perry, Petitioner,

v.

Herbert MCLAUGHLIN, Superintendent, Hudson Correctional Facility, Respondent.

No. 00 CIV. 2375(SAS).

United States District Court, S.D. New York.

Oct. 30, 2000.

17. James B. Stewart, *Den of Thieves* (1992).

Richard Davis (a.k.a. Sedrick Perry), Hudson Correctional Facility, Hudson, NY, for Petitioner (pro se).

Jerry Slater, Assistant Attorney General, Robert Morgenthau, District Attorney of New York County, New York City, for Respondent.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Pro se petitioner Richard Davis, a.k.a. Sedrick Perry, brings this petition for a writ of habeas corpus under 28 U.S.C. § 2254, seeking to set aside a June 25, 1996 judgment of the Supreme Court of the State of New York, New York County, convicting him of burglary in the second degree and petit larceny. Petitioner challenges his conviction on four grounds: (1) the evidence was insufficient to support his conviction because he was not given fair notice that he could not enter the building at issue; (2) the evidence was insufficient to support his conviction because he was entering the building to seek employment, not to commit a crime; (3) his right to a speedy trial was violated; and (4) his counsel was ineffective.

For the reasons stated below, petitioner's habeas petition is denied.

## I. Background

### A. Factual Background

At petitioner's trial before the Honorable Judge Dorothy A. Cropper, the prosecution introduced the following evidence.[1] On March 27, 1995, at approximately 9:55 a.m., petitioner entered the personal office of Erin Hoffert ("Hoffert"), a sales representative employed by First Reliance In-

---

1. Petitioner introduced no evidence at trial, nor did he testify.

surance Company ("First Reliance")[2]. *See* Trial Transcript ("Tr."), Ex. J. to 7/28/00 Answer and Affirmation of Jerry Slater in Opposition to Writ of Habeas Corpus ("Slater Aff."), at 34. Hoffert, who was seated with her back to the door, heard petitioner enter the office. *See id.* She did not turn to greet petitioner because she assumed he was a messenger picking up or dropping off papers for her. *See id.* In the office next door, Hoffert's boss, Robert Stafford ("Stafford"), also saw petitioner enter Hoffert's office. *See id.* at 60, 85. Stafford then noticed petitioner standing in the doorway of the office, holding Hoffert's purse and rummaging through its contents. *See id.* at 33, 61–62. When Stafford yelled at petitioner, Hoffert turned and saw petitioner with her purse. *See id.* at 34–35, 39, 61–62.

Stafford and Hoffert, joined by co-worker Nils Hedenger ("Hedenger"), chased petitioner as he fled through the reception area and into the main hallway by the elevator bank. *See id.* at 35, 63–64, 100–01. Finding no elevator cars available, petitioner ran to the men's room, opened the unlocked back entrance to First Reliance, ran through the office and emerged by the front entrance reception area. *See id.* at 36–37, 63–64. Stafford, who had backtracked to the front, grabbed petitioner. *See id.* at 64–65. Stafford saw Hoffert's purse "hanging from [petitioner's] coat" and demanded that petitioner return it. *Id.* at 38, 40, 64–66. When petitioner said he did not have the purse, a fight ensued between petitioner and Stafford. *See id.* at 38, 66–67. Petitioner pushed Stafford into the main hallway. *See id.* at 65–66, 101. When Stafford again demanded the purse, petitioner tried to kick Stafford in the groin, missed, and then kicked him inside his right leg. *See id.* at 38, 66–67, 101–103. According to Stafford, petitioner was flailing and kicking. *See id.* at 67. Stafford hit petitioner once in the head and knocked him down.[3] *See id.* at 41, 53, 66–68, 103, 108–109. When petitioner fell, Hoffert's purse dropped out of his coat. *See id.* at 68. Petitioner got up and ran, but was eventually trapped by the back door, which had been locked during the pursuit. *See id.* at 42, 68–69, 104. The building's maintenance team assisted Stafford and Hedenger in restraining petitioner until the police arrived. *See id.* at 18, 70–71, 104.

At trial, Hoffert, Stafford and Hedenger all identified petitioner as the man they chased through First Reliance's offices on March 27, 1995. *See id.* at 39, 69, 105. Hoffert testified that she never gave appellant permission to enter the offices of First Reliance and never gave him permission to enter her private office. *See id.* at 45–46. She admitted, however, that she did not see petitioner enter the reception area and did not see him at all until she heard Stafford scream and saw petitioner run out of her office with her purse. *See id.* at 51–52. Stafford testified that he never gave appellant permission to enter the offices of First Reliance and never saw him come in. *See id.* at 78, 83. He did not know whether or not appellant came in through the reception area or the back door. *See id.* at 85–86.

**B. Procedural Background**

By New York County Indictment Number 2928/95 filed on April 11, 1995, peti-

---

2. First Reliance is a private corporate insurance group located on the 24th floor of 11 West 42nd Street in Manhattan. Tr. at 30–31, 33, 56–58, 99. Its offices are not open to the public. *See id.* at 33. Upon exiting the elevator on the 24th floor, a visitor may either (1) proceed past two double wooden doors which open into First Reliance's reception area or (2) proceed in the opposite direction to the men's room, which also serves as a back entrance to First Reliance. *See id.* at 32–33, 59, 93. The reception area is never left unat-

tended. *See id.* at 32. The receptionist on duty on the day of the incident was a temporary employee who did not testify at trial. *See id.* at 49–50. The back entrance is usually locked and has a sign posted on it which reads "Please use front entrance. This is not an entrance. Door locked." *Id.* at 32, 59.

3. As a result of this altercation, Stafford broke a bone in his right hand. Tr. at 71–74, 77, 82.

tioner was charged with burglary in the second degree (N.Y. Penal Law ["P.L."] § 140.25(b)(1)), robbery in the second degree (P.L. § 160.10(2)(a)) and five counts of criminal possession of stolen property (P.L. § 165.45(2)). *See* Grand Jury Indictment, Ex. C. to 7/21/99 Motion to Vacate Judgment ("Motion to Vacate"). On March 23, 1996, petitioner filed a writ of habeas corpus, pursuant to N.Y.Crim. Pro. Law ("C.P.L.") § 30.30, contending that his right to a speedy trial had been violated. *See* Writ of Habeas Corpus, Ex. C. to 7/21/99 Motion to Vacate. Judge Brenda Soloff denied and dismissed the writ as moot, noting that petitioner had been tried and convicted, and was scheduled to be sentenced on June 24, 1996. *See* 6/14/96 Order, Ex. C. to 7/21/99 Motion to Vacate.

On June 11, 1996, after a bench trial before Judge Cropper, petitioner was found guilty of burglary in the second degree and petit larceny. Tr. at 149. Petitioner was acquitted on all other charges. *Id.* On June 25, 1996, defendant was sentenced as a predicate felon to concurrent prison terms of five to ten years for burglary in the second degree and one year for petit larceny. *See* Sentencing Transcript ("Sent."), Ex. J. to Slater Aff., at 15.

In his direct appeal, petitioner raised three grounds: (1) the People had not proven his guilt beyond a reasonable doubt on the burglary charge; (2) his conviction was against the weight of the evidence; and (3) he was mistakenly sentenced as a predicate felon. *See* 2/98 Appellate Brief for Defendant–Appellant ("Brief"), Ex. C. to Slater Aff. The Appellate Division unanimously affirmed the conviction. *See* 12/1/98 Decision and Order of Appellate Division ("Decision of Appellate Division"), Ex. F. to Slater Aff. The Appellate Division held that (1) the evidence of burglary in the second degree was legally sufficient—petitioner's unlicenced entry into a private office within the offices of First Reliance satisfied the trespassory element of second degree burglary; (2) the trial court properly rejected petitioner's un-

timely notice of intention to present psychiatric evidence, particularly since that evidence "was irrelevant to [petitioner's] ability to formulate the necessary intent"; and (3) the clerical error in the sentence and commitment sheet, stating that petitioner was adjudicated as a second violent felony offender, could not have affected the sentence imposed. *Id.* The Court of Appeals denied petitioner's leave to appeal. *See People v. Davis,* 93 N.Y.2d 872, 689 N.Y.S.2d 434, 711 N.E.2d 648 (1999).

Petitioner subsequently moved to vacate the judgment of conviction pursuant to C.P.L. § 440.10 on the grounds that (1) he was denied his right to a speedy trial under C.P.L. § 30.30; and (2) he was denied his right to the effective assistance of counsel. *See* 7/21/99 Motion to Vacate. Judge Cropper dismissed petitioner's speedy trial claim as "untimely since it was not made prior to the commencement of the trial in this matter." 10/20/99 Decision and Order of Supreme Court of New York ("Decision of Supreme Court"), Ex. I. to Slater Aff., at 2. Judge Cropper noted that petitioner, although represented by counsel, had filed a pro se application for a writ of habeas corpus, claiming a denial of his speedy trial rights under C.P.L. § 30.30. *See id.* However, immediately prior to trial, petitioner's attorney "tacitly withdrew the motion, conceding that his review of the adjournments in the case did not support the motion to dismiss the indictment on speedy trial grounds." *Id.* Judge Cropper concluded that petitioner's speedy trial claim had been "waived" and, even in the absence of a waiver, petitioner's counsel was correct in not asserting the speedy trial claim, as "only 29 days of pretrial delay were chargeable to the prosecution." *Id.* Judge Cropper also held that petitioner was not denied his right to effective assistance of counsel. *See id.* The Appellate Division, First Department, denied petitioner's leave to appeal. *See People v. Davis,* No. 2928/95 (1st Dep't 2000).

## II. Legal Standard

 A federal court may issue a writ of habeas corpus if (1) the state court adjudication resulted in a decision that was "contrary to" clearly established federal law, as determined by the United States Supreme Court or (2) the state court's decision involved an "unreasonable application" of clearly established federal law. *See* 28 U.S.C. § 2254(d). The United States Supreme Court recently confirmed and clarified this standard. *See Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1518–23, 146 L.Ed.2d 389 (2000) (Justice O'Connor wrote the opinion of the Court with respect to Part II, in which Rehnquist, C.J., Kennedy and Thomas, JJ., joined, and in which Scalia, J. joined except as to footnote at 1521). A state court adjudication is contrary to clearly established federal law either if the state court decision is contrary to a decision of the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See id.* at 1523. A state court's decision involves an unreasonable application of clearly established federal law if the state court identifies the governing legal principle, based on Supreme Court jurisprudence, but unreasonably applies that principle to the facts of a prisoner's conviction. *See id.* It is important that the "contrary to" inquiry and the "unreasonable application" inquiry be treated as separate and independent questions. *See id.* at 1522. The distinction lies in the difference between a state court adjudication that represents an objectively reasonable application of federal law and a state court adjudication that is overtly inconsistent with federal law.[4] *See id.* at 1521–22. Petitioner has failed to show that the state court adjudication was contrary to clearly established federal law or that it involved an unreasonable application of that law.

## III. Discussion

### A. Claim I: Insufficient Evidence

 Petitioner claims that his conviction was against the weight of the evidence and that the People did not prove his guilt beyond a reasonable doubt. *See* 2/14/00 Habeas Corpus Petition ("Pet."), Ex. A. to Slater Aff., at 5. Specifically, petitioner contends that the People failed to present sufficient evidence to prove that he entered the offices of First Reliance unlawfully and with the intent to commit a crime. *See id.*

 "[I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 ... the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The evidence adduced at petitioner's trial provides ample grounds for a trier of fact to conclude beyond a reasonable doubt that petitioner committed the crimes for which he was convicted.[5] Two employees of First Reliance testified that they saw petitioner commit the burglary. Three employees pursued and apprehended petitioner as he ran from the scene of the burglary. Moreover, one employee testified that he saw the stolen purse fall from petitioner's coat during an altercation with petitioner. *See supra* Part I.A.

In his Reply Brief to the Appellate Division, petitioner claimed that his indictment charged him with burglarizing a "building," and Hoffert's private office was not a "building" within the meaning of P.L.

---

4. Clearly established federal law, as determined by the Supreme Court, refers to "the holdings, as opposed to the dicta of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *See Williams,* 120 S.Ct. at 1523.

5. Reviewing courts weighing the sufficiency of evidence must view the evidence in the light most favorable to the People. *See Jackson,* 443 U.S. at 319, 99 S.Ct. 2781.

§ 140.25(b)(1). *See* 10/98 Reply Brief for Defendant–Appellant ("Reply Brief"), Ex. E. to Slater Aff., at 2–4. The Appellate Division rejected petitioner's "unpreserved contention that the indictment required the People to prove unlicensed entry into the public reception area of the building, rather than a private office therein." 12/1/98 Decision of Appellate Division, at 2. The Appellate Division noted that, "on the contrary, [petitioner's] unlicensed entry into a private office within the offices of the insurance company satisfied the trespassory element of the burglary charge contained in the indictment." *Id.*

Petitioner also contended in his Brief to the Appellate Division that he was erroneously precluded from introducing psychological evidence relevant to his ability to form the necessary intent to commit a crime. *See* 2/98 Brief, at 14–17. The Appellant Division disagreed, finding that the psychiatric evidence at issue was "irrelevant to [petitioner's] ability to formulate the necessary intent." 12/1/98 Decision of Appellate Division, at 2.

Petitioner claims that his intent in entering the offices of First Reliance was to seek employment, not to commit a crime. Based on the evidence presented at petitioner's trial, however, a reasonable trier of fact could rationally conclude that petitioner had the requisite intent to commit a crime. Indeed, the evidence at trial demonstrated that: (1) petitioner entered the offices of First Reliance without permission to do so; (2) petitioner was seen rummaging through Hoffert's purse by two witnesses in the office; (3) petitioner attempted to flee First Reliance while carrying Hoffert's purse; and (4) petitioner broke a bone in Stafford's hand in an altercation over the purse.

■ Petitioner has the burden of proving that the state court based its decision on an unreasonable determination of the facts in light of the evidence presented. *See Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir.1997). Petitioner has presented no proof that either the trial court or the Appellate Division were unreasonable in either the initial determination of the facts or the review of that determination. Thus, petitioner's claim that there was insufficient evidence to support his conviction must fail.

## B. Claim II: Speedy Trial Violation

Petitioner contends that his constitutional right to a speedy trial was violated. Specifically, petitioner contends that the prosecution was responsible for a delay of 196 days between his indictment on April 11, 1995 and his trial on June 6, 1996. *See* 2/14/00 Habeas Petition, at 6.

■ It is black letter law that a defendant is guaranteed a speedy trial by the Sixth and Fourteenth Amendments to the Constitution. *See, e.g., Barker v. Wingo,* 407 U.S. 514, 515, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). It is also well-settled law that constitutional speedy trial claims may not be waived because "[s]ociety has a recognized interest in speedy trials." *People v. Seaberg,* 74 N.Y.2d 1, 9, 543 N.Y.S.2d 968, 541 N.E.2d 1022 (1989).

■ A review of the record demonstrates that petitioner was not denied his Sixth Amendment right to a speedy trial. In *Barker v. Wingo,* the United States Supreme court outlined a four-part inquiry to determine whether a defendant's speedy trial right had been violated by prosecutorial delay. These four factors include "[l]ength of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530, 92 S.Ct. 2182. A balancing of these factors clearly shows that petitioner's claim is without merit.

■ Ordinarily, an examination of the *Barker* factors is unnecessary unless the length of the delay is presumptively prejudicial. *Id.See also United States v. Vassell,* 970 F.2d 1162, 1164 (2d Cir.1992). There is no precise amount of delay necessary to trigger an inquiry. However, "the delay that can be tolerated for an ordinary

street crime is considerably less than for a serious, complex conspiracy charge." *Barker*, 407 U.S. at 531, 92 S.Ct. 2182. This Court need not decide whether petitioner's fourteen month delay between indictment and trial is "presumptively prejudicial" as the remaining *Barker* factors do not support petitioner's claim.

The reason for the delay factor weighs most heavily against petitioner. Nothing in the record indicates a willful attempt by the State to delay the trial. *See id.* On the contrary, approximately three months of the delay appear to have resulted from (1) petitioner's failure to appear; (2) the assignment of new defense counsel due to petitioner's filing of a complaint against his attorney; (3) various adjournments for petitioner's counsel to appear; and (4) adjournments to obtain psychological evidence. Other time was spent by both petitioner and the State serving and responding to various pre-trial demands, and conducting pre-trial conferences and hearings.

Petitioner asserted a speedy trial claim pursuant to C.P.L. § 30.30 a full eleven months after his arrest. Judge Cropper's findings, supported by the trial record, indicated that petitioner's attorney "tacitly withdrew [petitioner's C.P.L. § 30.30] motion, conceding that his review of the adjournments in the case did not support the motion to dismiss the indictment on speedy trial grounds." 10/20/99 Decision of Supreme Court, at 2. Judge Cropper denied petitioner's motion to vacate pursuant to C.P.L. § 440.10, indicating that his speedy trial claim had been "waived" and, even in the absence of a waiver, petitioner's counsel was correct in not asserting the speedy trial claim since only 29 days were attributable to the prosecution. *Id.*

Last, petitioner can point to no prejudice emanating from the alleged delay in his trial. The most serious concern here is whether the defense has been impaired in any way. While "affirmative proof of particularized prejudice is not essential to every speedy trial claim," *Dog-gett v. United States*, 505 U.S. 647, 655, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), the general presumption that delay compromises the reliability of a trial increases in importance with the length of the delay. *See id.* Here, with a delay of just over one year, the presumption is weak. *See also Vassell*, 970 F.2d at 1165 n. 1 (suggesting an affirmative showing of prejudice is necessary in absence of extraordinary delay and government negligence). Petitioner has not alleged that the delay impaired his ability to present a defense; in fact, petitioner neither presented any evidence at trial, nor called any witnesses.

Accordingly, petitioner was not denied his constitutional right to a speedy trial.

### C. Claim III: Ineffective Assistance of Counsel

Petitioner contends that his trial counsel rendered constitutionally ineffective assistance because he failed to make a motion to dismiss the indictment under C.P.L. § 30.30, New York's speedy trial statute.

"To prevail on a claim of ineffective assistance of counsel, petitioner must satisfy the two-part test established by the Supreme Court" in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Loving v. O'Keefe*, 960 F.Supp. 46, 50 (S.D.N.Y.1997). Petitioner must show that (1) his attorney's representation was unreasonable under prevailing professional standards; and (2) there is a reasonable probability that, but for his attorney's errors, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. Further, there is a strong presumption that an attorney's decisions made in the course of representing a client are made in the exercise of reasonable professional judgment. *See id.* at 690, 104 S.Ct. 2052.

For the reasons discussed in rejecting petitioners' speedy trial claim, petitioner's ineffective assistance claim must also fail. Because petitioner's speedy trial claim would have been unsuccessful for the rea-

sons already enunciated, trial counsel's failure to assert the motion does not constitute ineffective assistance of counsel. *See Boyd v. Hawk,* 965 F.Supp. 443, 450 (S.D.N.Y.1997) (counsel was not ineffective for failing to make a speedy trial motion that would not have been successful). The record indicates that there was ample justification for counsel's decision not to pursue a speedy trial motion.

Therefore, petitioner's claim that his counsel was ineffective cannot support his request for habeas relief.

## IV. Conclusion

For the foregoing reasons, (1) petitioner's claim of insufficient evidence to support a conviction lacks merit; (2) petitioner's claim of speedy trial violation lacks merit; and (3) petitioner's claim of ineffective assistance of counsel lacks merit. Because petitioner has failed to make a substantial showing that he was denied a constitutional right, a certificate of appealability will not issue from this Court. *See* 28 U.S.C. § 2253(c)(2); *see also Lucidore v. New York State Division of Parole,* 209 F.3d 107, 112 (2d Cir.2000) (holding that substantial showing exists where (i) the issues involved in the case are debatable among jurists of reason or (ii) a court could resolve the issues in a different manner or (iii) the questions are adequate to deserve encouragement to proceed further). The Clerk of the Court is directed to close this case.

SO ORDERED: