**William D. BURNS, Petitioner,**

v.

**Blaine LAFLER, Respondent.**

**No. CIV.03–40189.**

United States District Court,
E.D. Michigan,
Southern Division.

July 26, 2004.

William Burns, Freeland, MI, Pro se.

Laura G. Moody, Brenda E. Turner, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, MI, for Blaine Lafler, Warden, Respondent.

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

GADOLA, District Judge.

Petitioner, presently confined at the Saginaw Correctional Facility in Freeland, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed *pro se,* Petitioner challenges his conviction on one count of conspiracy to burn real property, M.C.L. § 750.157a, one count of burning real property, M.C.L. § 750.73, and being a habitual offender, M.C.L. § 769.12. For the reasons stated below, the Court will deny the petition.

### I. BACKGROUND

Petitioner was convicted of the above offenses following a jury trial in the Lenawee County Circuit Court.[1] The charges arose from an arson committed at the Adrian Auto Auction on May 31, 1991. Petitioner was not charged until May 19, 1998.

William Newton testified that, on May 31, 1991, Newton and Petitioner left Corky Weaver's house in Toledo, Ohio, and drove to Adrian, Michigan. Petitioner informed Newton that they were going to set the Adrian Auto Auction on fire because there were documents inside of the business which could establish that Petitioner had sold stolen cars to the auction. Petitioner

---

1. Due to the brevity of the Michigan Court of Appeals' recitation of the facts, the Court will include facts from petitioner's state court appellate brief when discussing the facts of the case. *United States ex. rel. Drain v. Washington,* 52 F.Supp.2d 856, 860 (N.D.Ill.1999).

and Newton stopped at a store in Adrian and purchased a can of gasoline.

The men drove to the auto auction and gained access to the building through a window. Petitioner removed some papers from a file cabinet, spread gasoline around the area, and lit the fire. Newton and Petitioner then drove back to Weaver's house.

Newton admitted that he had been using cocaine and alcohol that day. He further acknowledged that he did not report the arson to the police until 1998 and further admitted that when he reported the incident to the police, he was motivated by the $5,000.00 reward being offered by the police for information concerning the arson. Newton had also been charged with the arson, but was testifying in exchange for a plea bargain in which the prosecutor agreed that he would receive no more than two years in prison. Newton testified that he had prior felony convictions for possession of burglary tools, forgery, and fraud. Newton indicated that the plea agreement would be withdrawn if he changed his story against Petitioner.

Weaver was Newton's girlfriend. Weaver testified that while living in Toledo in 1991, she heard Petitioner tell Newton that he wanted to get rid of some documents that the Adrian Auto Auction had concerning automobiles that Petitioner had stolen. Newton and Petitioner left the house. When they returned, the men informed her that they had burned down the auto auction. The men mentioned that they had used gasoline to ignite the fire and that there was butane inside of the building that they were afraid might explode.

Richard Barish testified that he and Ollie Holbrook owned the Adrian Auto Auction. Petitioner used to come to the auto auction. Barish knew that Petitioner worked for an auto dealer in Toledo, but had no knowledge about stolen cars. Barish denied that he had any involvement in the arson, claiming that he had no motive to set the auto auction on fire. Barish denied that he had contemplated declaring bankruptcy, but acknowledged that the auto auction had been for sale at the time of the fire. Barish admitted that he had gotten behind in his payments on the property and at one point had said, "if it burnt, it wouldn't be so bad." Barish claimed that this was "just an off-hand remark."

Michael Lewis of the Michigan State Police testified that he received information in 1991 that Petitioner and some accomplices had sold stolen automobiles to the Adrian Auto Auction. Lewis had intended to go to the auto auction to inspect the records, but the business burned on the morning that Lewis intended to visit the auto auction.

David Noland of the Lenawee County Sheriff's Department was qualified as an expert in the investigation of fires. On May 31, 1991, Noland was called to the Adrian Auto Auction while the fire was still being suppressed. Noland determined that the fire originated in the auction's office. The drawers of the desks and file cabinets had been opened and papers were strewn around the room. Based on the burn pattern that he observed on the floor, Noland believed that a liquid accelerant had been poured on the floor. Noland further discovered that the gas line to the ceiling-mounted heater had been disconnected so that the gas flow from the gas line would feed the fire. Noland concluded that the fire had been intentionally set. Within two weeks of the fire, Noland had received information that Petitioner was a suspect, but he was unable to verify this information. Another law enforcement agency asked Noland not to follow up on this information and not to investigate petitioner any further. Petitioner was not charged until May 1998, after Newton gave police his statement.

Holbrook informed Noland that Barish had spoken on several occasions about setting fire to a house that was adjacent to the auto auction.

Sharon Johnson testified for the defense as an alibi witness. In 1991, she had been romantically involved with Petitioner. Johnson worked at Toledo Jeep and had taken a vacation from May 30 to June 10, 1991 to drive to Florida with Petitioner. Johnson and Petitioner had stayed at motels along the route to Florida. Johnson identified a motel receipt from the trip home, when Johnson and Petitioner stayed at a motel in Kentucky for the nights of June 7–8, 1991. The receipt for the motel was signed "Paul Elsie," which was Petitioner's alias.

Robert Bratton of the Ottawa County (Ohio) Sheriff's Department testified for the defense. As part of a separate investigation, Bratton had obtained Johnson's work records from Toledo Jeep, which verified that she had taken time off from work for May 30 through June 10, 1991. Bratton also had obtained the motel receipt from Kentucky. Bratton lastly obtained telephone records which established that Petitioner had made telephone calls from Georgia and Alabama on June 3 and 6, 1991.

Lisa White worked at the Adrian Auto Auction. At one point, Barish informed White that the auction was in financial trouble and would not be around for much longer. Barish offered White $10,000.00 to set fire to the house in front of the auction so that he could collect the insurance money. White indicated that Barish had actually set up cups of kerosene, candles, and a kerosene heater and had left town. White came to set the fire, but when she arrived, someone had upset the cups and the kerosene, so she left without setting the fire.

Holbrook testified that Barish had been attempting to buy out Holbrook's share of the auto auction but had gotten behind in the payments. Barish had mentioned burning the house by the auction to obtain insurance proceeds.

Petitioner was convicted on this evidence. Petitioner's conviction was affirmed on appeal on December 26, 2000, and Petitioner's delayed application for leave to appeal was denied by the Supreme Court of Michigan on June 21, 2001. *People v. Burns*, 464 Mich. 870, 630 N.W.2d 621 (2001). The Supreme Court of the United States denied Petitioner's petition for the writ of certiorari on November 13, 2001. *Burns v. Michigan*, 534 U.S. 1027, 122 S.Ct. 562, 151 L.Ed.2d 436 (2001).

Petitioner thereafter filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et. seq.*, which was denied by the Lenawee County Circuit Court on April 17, 2002. The Michigan Court of Appeals denied leave to appeal on September 11, 2002. Likewise, the Supreme Court of Michigan denied leave to appeal on March 31, 2003. *People v. Burns*, 468 Mich. 873, 659 N.W.2d 233 (2003).

Petitioner's present habeas petitioner was accepted for filing in this Court on August 1, 2003. Petitioner seeks habeas relief on the following grounds:

I. Where the burning occurred on May of 1991, and petitioner William Burns was available for trial in the entire intervening period but the prosecution did not charge him until May 19 of 1998, did the circuit court judge err in denying petitioner's motion to dismiss because the delay violated the six-year statute of limitations and the constitutional rights to a speedy arrest and trial, and alternatively did the judge err in not submitting the questions to the jury?

II. Did the trial judge violate the court rule, deny William Burns a fair trial, and commit reversible error by flatly refus-

ing the jury's request during deliberations for the rereading of testimony?

III. Must petitioner's convictions be reversed as violative of his constitutional right to confrontation and due process, where the trial court abused its discretion in failing to exclude the evidence and testimony or dismiss the charges against him when the prosecution's noncompliance with the discovery order would and did result in actual prejudice?

IV. Was petitioner's Sixth Amendment rights to effective counsel violated by the court appointed appellate attorney where the attorney did not properly or adequately brief a constitutional issue raised?

V. Was petitioner's Sixth Amendment right to a speedy trial violated where the trial commenced thirty eight days after Michigan's 180 day speedy trial limitation of M.C.R. 6.004(D) and where the delay is charged to the prosecution?

VI. Is Michigan's statute of limitations, M.C.L. 767.24(1) as it was applied to defendant a violation of the Due Process, Speedy Trial, and Equal Protection Clauses of the U.S. Constitution, 5th, 6th, and 14th Amendments, and is the statute unconstitutional as written? [2]

## II. STANDARD OF REVIEW

■ The standard for reviewing petitions for the writ of habeas corpus is provided for in 28 U.S.C. § 2254(d). This section states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 411–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Further, 28 U.S.C. § 2254(e)(1) requires that this Court presume the correctness of state court factual determinations. A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir.1998).

## III. DISCOVERY MATTERS

Before turning to the merits of the habeas petitioner, the Court must address a pending discovery-related matters. Petitioner has filed a motion to compel Respondent to produce various materials which he claims were not filed when the Respondent filed an answer with the Court.

■ The habeas corpus rules require respondents to attach the relevant portions of the transcripts of the state court proceedings, if available, and the district court may also order, on its own motion or upon the petitioner's request, that further portions of the transcripts be furnished. *Ukawabutu v. Morton*, 997 F.Supp. 605, 609 (D.N.J.1998); Rules Governing § 2254 Cases, Rule 5, 28 U.S.C. foll. § 2254.

Petitioner first notes that the index of record provided by Respondent to the

---

**2.** Due to the brevity of the petition for writ of habeas corpus, this Court is willing to incorporate the arguments raised in petitioner's state appellate court briefs as part of petitioner's application for writ of habeas corpus. *See, e.g., Guidroz v. Lynaugh*, 852 F.2d 832, 834 (5th Cir.1988).

Court does not contain the motion transcripts from September 2, 1998, September 23, 1998, October 28, 1998, November 4, 1998, and the transcript of the jury trial excerpt from November 18, 1998. However, the Court notes that copies of these transcripts were provided to the Court and that, contrary to Petitioner's assertion, they were also listed in Respondent's index of record. Accordingly, there is no reason to compel the production of these documents.

Petitioner also indicates that it is unclear whether Respondent provided the Court with a copy of Petitioner's post-conviction motion for relief from judgment, a copy of his discovery motions, and a copy of his two motions for a directed verdict. This Court notes that Petitioner attached a partial copy of his post-conviction motion for relief from judgment to his habeas petition. A complete copy of this motion for relief from judgment was also attached to Petitioner's application for leave to appeal the denial of his motion for relief from judgment to the Michigan Court of Appeals, which was provided by Respondent to this Court. Petitioner has also attached a copy of his first motion for the directed verdict to his traverse and a copy of this motion was likewise provided by Respondent as part of the record from Petitioner's appeal of right with the Michigan Court of Appeals. Although neither the motions for discovery nor the second motion for a directed verdict were provided by either Petitioner or Respondent, the first motion for a directed verdict mentioned the motions for discovery and the information that had been requested by Petitioner. In addition, the transcripts from the motions for discovery and the second motion for a directed verdict also delineate the substance of Petitioner's requests and arguments from these motions. Accordingly, the Court will deny petitioner's motion to compel the Respondent to provide these additional materials.

■■■ The Court will also deny Petitioner's renewed request for discovery. Habeas petitioners do not have a right to automatic discovery. *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir.2001). A district court has the discretion, under Rule 6 of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254, to grant discovery to a habeas petitioner upon a fact specific showing of good cause. *Id.* If a petitioner can point to specific evidence that might be discovered that would support his constitutional claims, he is able to establish good cause to obtain discovery. *Marshall v. Hendricks*, 103 F.Supp.2d 749, 760 (D.N.J. 2000); *rev'd in part on other grds*, 307 F.3d 36 (3d Cir.2002). However, without a showing of good cause and without a habeas petitioner citing to specific information of what he hopes to learn from the additional discovery, a federal court will not order discovery. *Marshall*, 103 F.Supp.2d at 763–64. A habeas petitioner's vague and conclusory allegations are insufficient to obtain additional discovery. *Payne v. Bell*, 89 F.Supp.2d 967, 970 (W.D.Tenn. 2000).

■■■ Additionally, a district court does not abuse its discretion in denying a habeas petitioner's request for discovery, when the request falls more in the category of a "fishing expedition masquerading as discovery." *Stanford v. Parker*, 266 F.3d at 460. Moreover, a district court does not abuse its discretion by denying a habeas petitioner's request for discovery, when the discovery requested by a petitioner would not have resolved any factual disputes that could entitle him to habeas relief, even if the facts were found in his favor. *Id.*

Here, Petitioner is not entitled to have copies of the transcripts provided to him, because petitioner is essentially requesting to "embark on a fishing expedition masked as discovery" and the discovery sought by

petitioner would not entitle petitioner to habeas relief, even if the facts were found in his favor. *Sellers v. United States,* 316 F.Supp.2d 516, 523 (E.D.Mich.2004)(*quoting Stanford,* 266 F.3d at 460). Accordingly, the motion to compel production of the state post-conviction pleadings and transcripts will be denied.

## IV. ANALYSIS

### A. Claims 1 and 6: Statute of Limitations

In his first claim, Petitioner alleges that the trial court erred in failing to grant his motion to dismiss the charges against Petitioner because they were filed outside of Michigan's six-year statute of limitations. In his sixth claim, Petitioner alleges that Michigan's statute of limitations, as applied to him, violated his rights under the Due Process, Equal Protection, and Speedy Trial Clauses of the United States Constitution.

In denying Petitioner's claim, the Michigan Court of Appeals noted that Petitioner had been incarcerated in Ohio for more than one year during the time period between the date of the offense and the date that he was charged. The Michigan Court of Appeals concluded that pursuant to the plain language of Michigan's statute of limitations, the six-year period was tolled during that period of incarceration.

■■ Violations of state law and procedure which do not infringe specific federal constitutional protections are not cognizable claims under § 2254. *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). A state court's failure to properly apply a state statute of limitations does not violate due process or any other provision of the Constitution or a federal statute, and thus does not provide a basis for granting a writ of habeas corpus. *Loeblein v. Dormire,* 229 F.3d 724, 726 (8th Cir.2000); *Humphrey v. Cain,* 120 F.3d 526, 534 (5th Cir.1997); *see*

*also Wilson v. Mitchell,* 250 F.3d 388, 396–97 (6th Cir.2001). Petitioner's claim that the applicable state statute of limitations had run when he was charged with these crimes is therefore non-cognizable in a federal habeas corpus proceeding, because it raises solely an issue of state law. *Velazquez v. Sternes,* 151 F.Supp.2d 946, 950 (N.D.Ill.2001).

■ To the extent that Petitioner is claiming that his due process rights were violated by the seven-year delay in charging him with these offenses, this claim is also without merit. The due process inquiry must consider the reasons for the delay as well as prejudice to the accused. *United States v. Lovasco,* 431 U.S. 783, 790, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). The Sixth Circuit has consistently read *Lovasco* to hold that dismissal for pre-indictment delay is warranted only when the defendant shows: (1) substantial prejudice to his right to a fair trial; and (2) that the delay was an intentional device by the government to gain a tactical advantage. *United States v. Brown,* 959 F.2d 63, 66 (6th Cir.1992). To prosecute a defendant following an investigative delay does not deprive him of due process, even if his defense is somewhat prejudiced by the lapse of time. *Lovasco,* 431 U.S. at 796, 97 S.Ct. 2044.

Petitioner's due process pre-indictment delay claim fails for several reasons. First, Petitioner has failed to offer any evidence that the delay in charging him was an intentional device by the prosecution to gain a tactical advantage over him. Noland of the Lenawee County Sheriff's Department testified that he was informed that Petitioner was a suspect in the arson two weeks after the fire but was unable to verify this with any evidence. Petitioner was not charged until May 1998, after Newton came forward and gave police information which implicated Petitioner in

the arson. "[I]ntentional delay for the purpose of gaining tactical advantage ... [does] not include delay to affirmatively strengthen the government's case—such as delay until a potential witness becomes available by reason of a plea bargain or the like." *United States v. Crouch,* 84 F.3d 1497, 1514, n. 23 (5th Cir.1996).

Here, the prosecutor did not file charges until 1998 because it did not have a prosecutable case until then. As the prosecutor indicated at Petitioner's sentencing, in response to defense counsel's motion for a directed verdict or new trial, until Newton came forward in 1998 and agreed to become a witness for the prosecution, "their case was for all practical purposes untriable." (Sent. Tr. at 10). *Lovasco* recognized "that the interests of the suspect and society are better served if, absent bad faith or extreme prejudice to the defendant, the prosecutor is allowed sufficient time to weigh and sift evidence to ensure an indictment is well-founded." *United States v. Eight Thousand Eight Hundred Fifty Dollars ($8,850) in U.S. Currency,* 461 U.S. 555, 563, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983).

■ In this case, there is no allegation that the police or prosecution were aware of either Newton or Weaver until 1998. Due process is not violated when a pre-indictment delay is justified by the prosecution's discovery of a previously unknown witness. *United States v. Holland,* 985 F.Supp. 587, 598 (D.Md.1997). Under the circumstances, Petitioner is unable to establish that the delay was intentionally done to obtain a tactical advantage. *Monzo v. Edwards,* 281 F.3d 568, 581–82 (6th Cir.2002); *United States v. Lebron–Gonzalez,* 816 F.2d 823, 831 (1st Cir.1987).

■ Moreover, Petitioner has failed to demonstrate that he was substantially prejudiced by this delay. The main argument advanced in Petitioner's pre-trial motion to dismiss was that the delay in prosecution would prejudice Petitioner because his sentence would have to be consecutive to subsequently acquired sentences on other criminal convictions, thus, converting mandatory concurrent sentences into consecutive ones. This is insufficient to establish prejudice for purposes of establishing a due process violation. "[T]o bring a cognizable due process claim in this area, the pre-indictment delay must prejudice one's right to a fair *trial*—by, for example, causing evidence to become stale or disappear." *United States v. Wade,* 93 Fed. Appx. 874, 876 (6th Cir.2004)(emphasis original). This claim also fails because Petitioner offered no more than bare allegations in the state courts that the delay deprived him of concurrent sentencing. *United States v. Sherlock,* 962 F.2d 1349, 1354 (9th Cir.1989).

■ Petitioner's pre-trial motion argued that "Defendant is locating witnesses and is currently unaware of the amount of prejudice to his defense which he has suffered by reason of the delay." Counsel made a similar argument at the hearing on the motion to dismiss. The alleged prejudice from a pre-indictment delay in filing an indictment is insufficient to establish a due process violation if it is insubstantial, speculative, or premature. *United States v. Grap,* 368 F.3d 824, 829 (8th Cir.2004). A defendant must make more than a vague assertion that memories have diminished, witnesses have been lost, and documents have been misplaced to establish actual prejudice from a pre-indictment delay. *United States v. Beszborn,* 21 F.3d 62, 67 (5th Cir.1994); *United States v. Mask,* 154 F.Supp.2d 1344, 1348 (W.D.Tenn.2001).

■ Here, Petitioner has failed to show that he suffered any substantial prejudice to his defense as a result of the pre-indictment delay. Petitioner was able to present an alibi defense through Johnson's testimony and was able to obtain docu-

ments to corroborate that defense. Petitioner was able to present witnesses to establish that Barish had a motive for setting his business on fire and had made comments expressing an intent to do so, even going so far as paying White money to commit an arson. Petitioner has failed to indicate what additional evidence was lost to the defense because of the pre-indictment delay and has therefore failed to establish a due process violation.

Petitioner further claims that the tolling provision of Michigan's statute of limitations violates the Equal Protection Clause of the Fourteenth Amendment, because it treats out of state residents different than residents of the State of Michigan in that the tolling provision excludes from the limitations period any time that a defendant does not "usually and publicly reside" within the State of Michigan. M.C.L. § 767.24(1).

 Unless a classification warrants some form of heightened review because it impacts upon a fundamental right or categorizes persons on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification be rationally related to a legitimate state interest. *Nordlinger v. Hahn,* 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992). A criminal defendant has no fundamental, constitutional right to any particular period of limitation against being prosecuted for a crime, and therefore any equal protection challenge to a statute of limitations' tolling statute should be analyzed by using the rational basis test. *People v. Laughlin,* 293 Ill.App.3d 194, 227 Ill.Dec. 680, 687 N.E.2d 1162, 1165–66 (1998).[3] A rational basis exists for provisions of statutes of limitations which exclude from the limitations period any time in which a criminal defendant was not

a resident of the prosecuting state, because nonresidents are not similarly situated to residents, in that investigating, charging, and prosecuting an individual with a crime is generally more difficult when the suspect is not within the state. *Id.; see also Scherling v. Superior Court,* 22 Cal.3d 493, 149 Cal.Rptr. 597, 585 P.2d 219, 224–25 (1978). *Cf. United States v. Udell,* 109 F.Supp. 96, 97–98 (D.Del.1952). Accordingly, this Court rejects Petitioner's equal protection challenge to the tolling provision of the Michigan statute of limitations.

Petitioner's related Sixth Amendment speedy trial claim involving the alleged violation of the six-year statute of limitations is without merit. Speedy trial rights do not arise until charges are pending. *United States v. MacDonald,* 456 U.S. 1, 7, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982); *United States v. Norris,* 780 F.2d 1207, 1211 (5th Cir.1986). Petitioner was not charged with this crime until May 19, 1998. Because the Sixth Amendment's Speedy Trial Clause was not triggered until Petitioner was charged, any pre-indictment delay in this case did not implicate the Sixth Amendment right to a speedy trial. Therefore, for all of these reasons, Petitioner is not entitled to habeas relief on his first and sixth habeas claims.

**B. Claims 4 and 5: Speedy Trial / Ineffective Assistance of Appellate Counsel**

The Court will consolidate Petitioner's fourth and fifth habeas claims because they are interrelated. In his fifth claim, Petitioner contends that his Sixth Amendment right to a speedy trial was violated because he was not brought to trial within 180 days of being charged, in violation of

---

**3.** When there is paucity of federal law on a subject, state decisions interpreting the Federal Constitution, while not binding on a federal court, are persuasive. *Millender v. Adams,* 187 F.Supp.2d 852, 874, n. 6 (E.D.Mich. 2002).

Michigan's 180 day rule. Petitioner contends that the prosecution's failure to do so violated his Sixth Amendment right to a speedy trial. In his fourth claim, Petitioner contends that he was denied the effective assistance of counsel on appeal, because his appellate counsel inadequately briefed this speedy trial issue.

As indicated above, the Sixth Amendment guarantees a criminal defendant the right to a speedy trial. To determine whether a speedy trial violation has occurred, courts consider four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) the prejudice to the defendant. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). No single factor is determinative, rather the Court must weigh them and engage in a "difficult and sensitive balancing process" to determine whether a constitutional violation has occurred. *Id.* at 533, 92 S.Ct. 2182.

■ Petitioner's speedy trial claim fails for several reasons. The length of delay is a "triggering factor" because "until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* at 530, 92 S.Ct. 2182. Therefore, to trigger a speedy trial analysis, the accused must allege that the interval between the accusation and the trial has crossed the threshold dividing ordinary from presumptively prejudicial delay. *Doggett v. United States,* 505 U.S. 647, 651–52, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). Courts have generally found post-accusation delays that approach one year to be "presumptively prejudicial." *Id.* at 652 n. 1, 112 S.Ct. 2686; *United States v. Brown,* 90 F.Supp.2d 841, 846 (E.D.Mich. 2000).

■ Here, Petitioner was formally charged with a crime on May 19, 1998, and trial commenced on November 12, 1998.

Such a delay, less than six months, is not presumptively prejudicial. *Norris v. Schotten,* 146 F.3d 314, 328 (6th Cir. 1998)(eight months); *United States v. Lugo,* 170 F.3d 996, 1002 (10th Cir.1999) (seven months); *United States v. Arkus,* 675 F.2d 245, 248 (9th Cir.1982) (six months). Petitioner has therefore failed to establish that this delay was presumptively prejudicial and it would therefore be unnecessary for this Court to inquire into the other *Barker* factors. *United States v. Cope,* 312 F.3d 757, 778 (6th Cir.2002).

■ Petitioner's claim must also fail because there is no evidence on the record that any part of this delay was intentionally caused by the trial court or the prosecution. *Norris,* 146 F.3d at 327–28. Nothing in the record indicates a "willful attempt" by the prosecution to delay the trial. *Davis v. McLaughlin,* 122 F.Supp.2d 437, 443 (S.D.N.Y.2000). Nor is there any evidence that the state intentionally delayed the trial to gain a tactical advantage over petitioner. *Castro v. Ward,* 138 F.3d 810, 820 (10th Cir.1998). Finally, because Petitioner has not shown that his defense was prejudiced by this delay (*see supra* Claim 1), he is not entitled to habeas relief on his speedy trial claim. *Owsley v. Bowersox,* 48 F.Supp.2d 1195, 1211 (W.D.Mo.1999).

■ To the extent that Petitioner claims that his right to a speedy trial was deprived because he was brought to trial in violation of Michigan's 180 day rule set forth in M.C.L. § 780.131 and M.C.R. 6.004(d), Petitioner would not be entitled to federal habeas relief. A violation by state officials of a state speedy trial law, taken alone, does not present a federal claim. *Poe v. Caspari,* 39 F.3d 204, 207 (8th Cir.1994); *Wells v. Petsock,* 941 F.2d 253, 256 (3d Cir.1991). Petitioner is therefore not entitled to habeas relief on his fifth claim.

■ The Court will likewise reject petitioner's claim that appellate counsel was ineffective in presenting his speedy trial claim on his appeal of right. The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey,* 469 U.S. 387, 396–97, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Thus, an attorney's failure to present a non-meritorious issue on appeal does not constitute ineffective assistance of counsel. *Daniel v. Overton,* 845 F.Supp. 1170, 1176 (E.D.Mich. 1994). Because petitioner's speedy trial claim is without merit, Petitioner is unable to show that he was prejudiced by appellate counsel's failure to adequately argue the speedy trial issue on appeal. *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Mackenzie v. Portuondo,* 208 F.Supp.2d 302, 319–20 (E.D.N.Y.2002). Accordingly, Petitioner is not entitled to habeas relief on his fourth claim.

### C. Claim 2: Re–Reading of Testimony

■ In his second claim, Petitioner contends that the trial court erred by flatly refusing the jury's request during deliberations for the re-reading of testimony. There is no United States Supreme Court decision requiring judges to re-read testimony or to provide transcripts to jurors upon their request. *Friday v. Straub,* 175 F.Supp.2d 933, 939 (E.D.Mich.2001); *see also Spalla v. Foltz,* 615 F.Supp. 224, 233–34 (E.D.Mich.1985). The phrase "clearly established federal law," for purposes of § 2254(d)(1), is the governing legal principle or principles set forth by the United States Supreme Court at the time that the state court renders its decision. *Lockyer*

*v. Andrade,* 538 U.S. 63, 71–72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). A habeas court may therefore look only at the holdings of the United States Supreme Court as they existed at the time of the relevant state court decision to determine whether the state court decision was contrary to, or an unreasonable application of, clearly established federal law. *Johnson v. Renico,* 314 F.Supp.2d 700, 706 (E.D.Mich.2004). Because there is no clearly established federal law which mandates the re-reading of testimony to jurors upon their request, the Michigan Court of Appeals' rejection of Petitioner's claim was not contrary to, or an unreasonable application of, clearly established federal law so as to entitle Petitioner to habeas relief on his second claim.

### D. Claim 3: Discovery

Lastly, in his third claim, Petitioner contends that the prosecutor violated several discovery orders in violation of Michigan law. Petitioner further claims that the trial court erred in failing to dismiss the criminal charges against Petitioner because of these discovery violations.

■ To the extent that Petitioner is claiming that the prosecutor violated state discovery rules, he would not be entitled to habeas relief. A claim that a prosecutor violated state discovery rules is not cognizable in federal habeas review because it is not a constitutional violation. *Lorraine v. Coyle,* 291 F.3d 416, 441 (6th Cir.2002); *Friday,* 175 F.Supp.2d at 940.

■ To the extent that Petitioner contends that the violation of the discovery order violated his due process rights, this claim fail as well. Suppression by the prosecution of evidence favorable to the defendant upon request violates due process, when the evidence is material to either guilt or punishment of the defendant, irrespective of the good or bad faith of the prosecution. *Brady v. Maryland,* 373 U.S.

83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). There are three components of a true *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene,* 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). Materiality, for purposes of *Brady,* pertains to the issue of guilt or innocence, and not to the defendant's ability to prepare for trial. *United States v. Agurs,* 427 U.S. 97, 112, n. 20, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

Petitioner claims that his due process rights were violated because the prosecution failed to turn over certain evidence until his trial, specifically, Newton's prior criminal record, the written fire investigation reports, and certain evidence from an Ohio prosecutor, namely motel receipts and telephone records, which corroborated his alibi defense. Petitioner claims that the failure to turn over these materials until trial prevented his attorney from being able to adequately prepare for trial and hindered his ability for effective cross-examination of witnesses.

 *Brady* generally does not apply to the delayed disclosure of exculpatory information, but only to a complete failure by the prosecutor to disclose such information. *United States v. Davis,* 306 F.3d 398, 421 (6th Cir.2002). If previously undisclosed evidence is disclosed during trial, no *Brady* violation occurs unless the defendant is prejudiced by its non-disclosure. *United States v. Word,* 806 F.2d 658, 665 (6th Cir.1986); *see also United States v. Bencs,* 28 F.3d 555, 560–61 (6th Cir.1994).

 Here, Petitioner's contention that the late disclosure of these materials precluded his defense counsel from adequate trial preparation is non-cognizable pursuant to *United States v. Agurs,* 427 U.S. 97,

96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). *Bencs,* 28 F.3d at 561. Petitioner's claim that the belated disclosure of these materials hindered his ability for effective cross-examination lacks substance because Petitioner has not offered any explanation or exemplification on how the tardy disclosure of these materials hampered his ability to cross-examine the witnesses. *Bencs,* 28 F.3d at 561.

 In his traverse (or reply brief) in support of his petition, Petitioner, for the first time, alleges that he only received incomplete copies of the requested criminal records and fire arson reports at trial. This Court notes that a traverse or reply to an answer to a habeas petition is not the proper pleading for a habeas petitioner to raise additional grounds for relief. *Cacoperdo v. Demosthenes,* 37 F.3d 504, 507 (9th Cir.1994). A court cannot consider new issues raised in a traverse or reply to the State's answer. *Lewis v. Witek,* 927 F.Supp. 1288, 1291, n. 2 (C.D.Cal.1996). Moreover, Petitioner does not indicate how these missing materials were exculpatory to his case. The burden is on a habeas petitioner to prove that evidence that is required to be disclosed to him under *Brady* was not disclosed to him. *Coe v. Bell,* 161 F.3d 320, 344 (6th Cir.1998). Allegations that are merely conclusory or which are purely speculative cannot support a *Brady* claim. *Murphy v. Johnson,* 205 F.3d 809, 814 (5th Cir.2000). Petitioner fails to allege that any of these materials were exculpatory; therefore, he is not entitled to habeas relief on this part of his third claim.

 Petitioner further claims that his due process rights were violated because the prosecution failed to provide him with his own prior criminal history, which included thirty-two felony convictions. There is no *Brady* violation when a defendant knew or should have known the es-

sential facts permitting him to take advantage of any exculpatory information, or when the evidence is available from another source. *Coe,* 161 F.3d at 344. The *Brady* rule does not assist a defendant who is aware of essential facts that would allow him or her to take advantage of exculpatory evidence. *Coleman v. Mitchell,* 268 F.3d 417, 438 (6th Cir.2001). Because Petitioner should have been aware of his own criminal record, the prosecution's failure to provide Petitioner with his prior criminal record was not a violation of *Brady.* Therefore, Petitioner is not entitled to habeas relief on his third claim.

## IV. CONCLUSION

**ACCORDINGLY, IT IS HEREBY ORDERED** that Petitioner's motion to compel production of the state post-conviction pleadings and transcripts will be denied [docket entry 32] is **DENIED.**

**IT IS FURTHER ORDERED** that the petition for writ of habeas corpus is **DENIED** and this action is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that if Petitioner desires to seek a certificate of appealability ("COA"), Petitioner may file a **MOTION** for a COA within **TWENTY-ONE (21) DAYS** of filing a notice of appeal and shall support this motion with an appropriate brief, both of which shall comply with the Local Rules of this Court. *Castro v. United States,* 310 F.3d 900, 903 (6th Cir.2002) (*"We do encourage petitioners as a matter of prudence to move for a COA at their earliest opportunity so that they can exercise their right to explain their argument for issuance of a COA."*) (emphasis added). Respondent may file a response with an appropriate brief, both of which shall comply with the Local Rules,

within **FOURTEEN (14) DAYS** of service of Petitioner's motion for a COA.

**SO ORDERED.**